**Dorothy SCHRADER, Appellant,**

v.

**ROYAL CARIBBEAN CRUISE LINE, INC., Royal Caribbean Ltd., and Royal Caribbean Corp., Appellees.**

No. 90–2598.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1991.

Decided Dec. 26, 1991.

Rehearing Denied Jan. 24, 1992.

Kurt Odenwald, St. Louis, Mo., argued (David Helfrey, on brief), for appellant.

Leo Nelson, St. Louis, Mo., argued (Paul Lee, on brief), for appellees.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Dorothy Schrader appeals from the district court's entry of summary judgment against her in her suit against the Royal Caribbean Corporation.[1] Schrader fell and was injured while on board the cruise ship "Song of Norway." She originally sued Royal Caribbean Cruise Line, Inc., the company that she believed operated the ship, alleging a maritime law claim as well as pendent claims. After the limitations period for filing suit had expired, she learned that the Corporation, not Cruise Line, Inc. operated the ship. She amended her complaint to add the Corporation as a defendant, but the district court entered summary judgment in the Corporation's favor on the ground that Schrader's suit was time-barred. Schrader appeals, arguing that her amended complaint naming the Corporation should relate back to the date of filing under Fed.R.Civ.P. 15(c) (effective until December 1, 1991), or that the Corporation should be estopped from relying on

---

1. Since this case involves a number of entities which have names beginning with "Royal Caribbean," we will omit those two words in referring to the entities—for instance, we will refer to "Royal Caribbean Corporation" as the "Corporation."

the time limitation. We reverse and remand for further proceedings.

On January 29, 1988, an unsecured steel door on the "Song of Norway" swung open and startled passenger Schrader, who fell on the deck and broke her hip. Schrader's ticket did not explicitly identify the operator of the "Song of Norway," but it stated that in order to bring suit against the "carrier or vessel" for a personal injury, Schrader would have to notify the "carrier or its agent" of the claim within six months and file suit within one year of the injury.[2] Though the word "carrier" is not defined by naming any corporate entity, the word "vessel" is defined as "any ship chartered, operated, or provided by Royal Caribbean Ltd., on which the Passenger may be traveling or, as the case may be, against which the Passenger may have a claim." The cover of the ticket simply bears the words "Royal Caribbean Ltd., A/K/A Royal Caribbean Cruise Line," and the ticket itself has a space for the passenger to sign the ticket and, above that space, the words: "Royal Caribbean Cruise Line, Inc. General Sales Agent." The cruise departed from the port of San Juan, Puerto Rico.

On June 30, 1988 Schrader's lawyers sent a letter addressed to "Port Agent Royal Caribbean Cruise Lines" in San Juan and Miami giving notice of Schrader's claim. The letter stated that the accident occurred on the "Song of Norway, operated by Royal Caribbean Cruise Lines, Inc." and that the letter constituted notice of Schrader's "claim against Royal Caribbean Cruise Line, Inc." The letter referred repeatedly to actions taken by "the cruise line" in connection with the accident. Schrader's attorneys then checked with the Cruise Line, Inc. office in Miami, which assured them that the notice sent to Miami was sufficient.

In response to the June 30, 1988, letter, Schrader's lawyers received a letter from one Anthony Picciurro, stating that his firm, Southern Marine Claims Service, "normally represents this cruise line and

their liability insurers in matters of this nature." The letter specifically purported to be on behalf of the owner and operator of the ship because it stated that "this letter ... [is] of course entirely without prejudice to any rights or defenses which the owners and operators of the M/S 'Song of Norway' may have in this matter." Some settlement discussions followed, but the parties never reached an agreement.

Schrader's lawyer filed an affidavit stating that before filing suit he "contacted the Florida Secretary of State's Office to determine the address of the registered agent for Royal Caribbean Cruise Line, Inc. and any other party with a similar or like name, including parties who had been identified in previous suits against either the cruise line or the ship itself.... I was also informed that there was no listing for I.M. Skaugen A/S, whom I believed to be the owner of the vessel, nor was there a listing for Royal Caribbean Ltd. a/k/a Royal Caribbean Cruise Line, the only other party identified on the contract for passage."

Schrader filed suit on January 26, 1989, naming only Cruise Line, Inc. as defendant. She did not effect service of process on Cruise Line, Inc. until January 30, 1989, the day after the one year contractual limitation period expired. Cruise Line, Inc. filed an affidavit revealing that Cruise Line, Inc. was merely a sales agent and was not the operator of the "Song of Norway," and establishing that Royal Caribbean Ltd. was the operator at the time of the accident. Cruise Line, Inc. filed interrogatory answers indicating that Limited was dissolved on November 3, 1988, and its rights and obligations were assumed by the Corporation, a Liberian corporation. Schrader then amended her complaint to name the Corporation as defendant.

The Corporation filed for summary judgment on the grounds that Schrader had failed to bring suit against it within the one-year contractual limitations period. Cruise Line, Inc. also moved for summary judgment, on the ground that it was only

**2.** The contractual limitations periods for giving notice of the claim and instituting suit on the claim are the shortest periods permissible for this type of claim under maritime law, 46 U.S.C.App. § 183b (1988).

the sales agent and had no part in operating the ship. The district court granted both motions. *Schrader v. Royal Caribbean Cruise Line, Inc.*, No. 89–0135C(A) (E.D.Mo. Feb. 13, 1990); *Schrader*, No. 89–0135C(A) (Aug. 15, 1990). Schrader does not appeal the August 1990 judgment in favor of Cruise Line, Inc.

Since the Corporation admittedly was not named as a defendant until after the one-year limitation period expired, the arguments in the district court focused principally on whether Schrader's amended complaint naming the Corporation could relate back under Rule 15(c) to the date Schrader first filed suit.

Rule 15(c) [3] provides in part:

> **Relation Back of Amendments. [Effective until Dec. 1, 1991.]** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Because Schrader did not notify either Cruise Line, Inc. or the Corporation of the fact that she had brought suit until after the contractual limitations period expired, the district court held that her claim against the Corporation could not relate back. *Schrader*, slip op. at 7–8 (Feb. 13, 1990). The district court cited *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91

L.Ed.2d 18 (1986), clearly the controlling case on the Rule 15(c) issue.

## I.

■ On appeal, Schrader argues that her amended complaint should indeed relate back under Rule 15(c), for five reasons, none of which we find convincing.

First, Schrader distinguishes *Schiavone* by arguing that it was easy for the *Schiavone* plaintiffs to discover the proper defendant, whereas in her case the proper defendant was hidden in a "corporate maze." The *Schiavone* plaintiffs, like Schrader, mistakenly failed to name the correct defendant in the original complaint and failed to effect service on anyone until after the limitations period had run. 477 U.S. at 24–25, 106 S.Ct. at 2381–82. The *Schiavone* plaintiffs meant to sue the owners of Fortune magazine; they named as defendant "Fortune," which was not a legal entity, instead of "Time, Incorporated," the actual owner of the magazine. *Id.* at 22–23, 106 S.Ct. at 2380–81. Time, Incorporated, was identified as owner of the magazine in the very edition of the magazine that gave rise to the *Schiavone* claim. *Id.* at 28, 106 S.Ct. at 2383. The plaintiffs were unable to serve "Fortune," and so, after the limitations date had passed, they amended their complaint to name Time, Incorporated. *Id.* at 23, 106 S.Ct. at 2381. They served Time, Incorporated, within the time for service allowed by Fed.R.Civ.P. 4. The Supreme Court held that the amendment did not relate back because the plaintiffs had not given Time, Incorporated, notice of the suit before the limitations period expired. *Id.* at 30–31, 106 S.Ct. at 2384–85.

■ While the Supreme Court did note that the *Schiavone* case "was not a situation where the ascertainment of the defendant's identity was difficult for the plaintiffs," *id.* at 28, 106 S.Ct. at 2383, it is not at all clear that this fact was crucial to the Court's Rule 15(c) analysis. On the contrary, the Court's holding was that "[t]he linchpin [of Rule 15(c) ] is notice, and notice

---

**3.** Rule 15(c) has been amended effective December 1, 1991, to expand the time for giving notice to include "the period provided by Fed.R.Civ.P. 4(m) for service of the summons and complaint."

within the limitations period." *Id.* at 31, 106 S.Ct. at 2385. In fact, we held in *Brown v. E.W. Bliss Co.*, 818 F.2d 1405 (8th Cir.), *reinstated after rehearing*, 831 F.2d 810 (8th Cir.1987), that *Schiavone* would not permit relation back under Rule 15(c) in a case in which the defendant corporations had been through a mind-boggling series of permutations and name changes, *see* 818 F.2d at 1406–07. In *Brown* there was evidence that the corporations' agents had misled the plaintiff about the name of the corporation they represented. *Id.* at 1409 n. 3. *But cf. Hafferman v. Westinghouse Elec. Corp.*, 653 F.Supp. 423, 429 (D.D.C.1986) (holding Rule 15(c) relation back proper where defendant's conduct partly responsible for plaintiff's mistake in naming wrong party). *Brown* rules out Schrader's argument that Rule 15(c) would authorize relation back without timely notice if the correct defendant were difficult to identify.[4]

Second, Schrader argues that the Rule 15(c) notice requirement should be met in her case by the "identity of interest" doctrine set out in *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir. 1984), which holds that timely notice of the suit to a related entity may be imputed to the proper defendant. *Id.* at 1401. However, in this case, as in *Schiavone*, the identity of interest test does not help the plaintiff, since Schrader failed to notify either the Corporation or Cruise Line, Inc. that the suit had been filed until after the limitations period. "Thus, there was no proper notice to [Cruise Line, Inc.] that could be imputed to [the Corporation]." *Schiavone*, 477 U.S. at 29, 106 S.Ct. at 2384.

Third, Schrader tries to avoid *Schiavone* by arguing that Rule 15(c) analysis is irrelevant to her case because the limitations period in this case was imposed by contract, not by statute. Schrader cites no case that supports her argument, and in fact relies on *Kornberg v. Carnival Cruise*

*Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985), in which a court discussing a tolling question stated, "There is no essential difference between contractual [sic] and statutory limitations." *Id.* at 1337. Schrader would have us discard a contractual limitation that was implicitly authorized by Congress in 46 U.S.C.App. § 183b. We decline to do so.

■ Fourth, Schrader argues that she should be excused from filing suit within the contractual period, since 46 U.S.C.App. § 183b excuses failure to "give notice" in certain situations. However, section 183b distinguishes between "giving notice of or filing claims" on the one hand, and "the institution of suits on such claims" on the other hand. 46 U.S.C.App. § 183b(a). The statute only provides an excuse for failing to give notice on time, not for failing to institute the suit on time. 46 U.S.C.App. § 183b(b). Therefore, section 183b does not address Schrader's problem.

■ Schrader last distinguishes *Schiavone* on the ground that she notified "Royal Caribbean Cruise Line" in June 1988 that she intended to sue unless her claim could be settled, whereas the *Schiavone* plaintiffs did not provide any such notification that they intended to file suit. She argues that her June 1988 letter should satisfy the notice requirement of Rule 15(c). But this argument is refuted by the very language of Rule 15(c), which refers to "notice of the institution of the action," not "notice that action *will be* instituted." We applied the plain language of the rule in *Brown*, in which we held that even though the plaintiff and the proper defendant's agent carried on settlement negotiations within the limitations period, 818 F.2d at 1407, the plaintiff still had not given timely Rule 15(c) "notice." *Id.* at 1409; *see also id.* at 1411. Therefore, Schrader's notice to "Royal Caribbean Cruise Line" of her claim

---

**4.** However, *Brown* explicitly left open the possibility that equitable estoppel might be available in such a case; the *Brown* court simply declined to base its ruling on equitable estoppel because the parties had never advanced that theory. 818

F.2d at 1409 n. 3. Therefore, the similarity between the facts in this case and those in *Brown* does not affect our discussion of Schrader's estoppel argument, *infra* at 1013–14.

does not satisfy the requirements of Rule 15(c).

## II.

■ The district court's Rule 15(c) holding thus seems to us unassailable. However, the matter does not end there. Schrader argues that the Corporation should be equitably estopped from relying on the limitations period because the Corporation misled Schrader as to the identity of the proper defendant.

The district court did not address the issue of equitable estoppel, though Schrader raised it (albeit briefly and vaguely) in her district court motion papers.

Summary judgment against Schrader is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (quoted in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "In reviewing a district court's grant of summary judgment, this court applies the same standard as the district court and views the facts in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be drawn from the facts." *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990).

■ The doctrine of equitable estoppel is applicable under maritime law, and was applied to prevent a defendant from asserting a limitations bar in the maritime case of *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir.1989). *Keefe* stated:

To successfully invoke the doctrine, the late arriving plaintiff must show that she "was misled by defendant or its agents so that [s]he delayed suit because of (a) an affirmative statement that the statutory period to bring the action was longer than it actually was, or (b) promises to make a better settlement of the claim if plaintiff did not bring suit or (c) comparable representations and conduct." ...

Part (c) in the foregoing list of estoppel-creating deceptions is a catch-all encompassing all manner of conduct analogous to the rather specific examples set forth in parts (a) and (b).

*Id.* at 1323–24 (citations omitted).

Specifically, the doctrine of equitable estoppel has been applied to prevent a defendant from relying on a limitations bar if that defendant contributed to confusion about who the proper defendant was: "If the originally named defendant or the party sought to be added either knowingly allows plaintiff to think he has sued the proper party or actually misleads him as to the identity of the party that should be held responsible, the new defendant will be estopped from asserting a statute of limitations defense." 6A Charles A. Wright et al., Federal Practice and Procedure § 1500 (1990).

A defendant's actions making it difficult for the plaintiff to learn the intended defendant's proper name until after the limitations period expired formed the basis for an equitable estoppel in *Bechtel v. Robinson*, 886 F.2d 644 (3d Cir.1989). In *Bechtel*, a plaintiff was injured in a restaurant. The restaurant's owner had failed to comply with state laws requiring him to register the actual owner's name along with the trade name in the County Prothonotary's office and to post his restaurant license in a public area of the restaurant. *Id.* at 648. The plaintiff was unable to identify the proper owner of the restaurant and sued the wrong party. The plaintiff did not learn the identity of the restaurant's owner until after the statute of limitations had expired. *Id.* at 646–47. When he tried to add the proper defendant, the defendant argued the suit was time-barred. The Third Circuit held that these facts "warrant[ed] the application of equitable estoppel as a matter of law" to prevent the defendant from relying on the limitations defense. *Id.* at 651. *See also Hafferman*, 653 F.Supp. at 429.

■ Not only the defendant's actions, but also the plaintiff's diligence in ascertaining the proper defendant, is relevant in deciding whether equitable estoppel is ap-

propriate. *Garcia v. Peter Carlton Enter., Ltd.,* 717 F.Supp. 1321, 1326–27 (N.D.Ill.1989) (denying estoppel where defendant's insurer identified incorrect party as its insured but plaintiffs could have determined correct defendant "with minimal investigation"); *Slack v. Treadway Inn of Lake Harmony, Inc.,* 388 F.Supp. 15, 21 (M.D.Pa.1974) (defendant not estopped from invoking statute of limitations when defendant was registered as owner of property in question in public records).

In this case, Schrader's ticket bore the names of Royal Caribbean Ltd. a/k/a Royal Caribbean Cruise Line and Royal Caribbean Cruise Line, Inc. The ticket did not state that Royal Caribbean, Ltd. was the operator of the "Song of Norway," but it did define "vessel" as "any ship . . . operated . . . by Royal Caribbean Ltd." This could support an inference that Limited was the operator.

However, when Schrader's attorney sent notice of her claim to "Royal Caribbean Cruise Lines" giving notice of her injury to "Royal Caribbean Cruise Lines, Inc.," Limited arguably misled her in two ways. First, the insurance agent replied to the notice given to "Royal Caribbean Cruise Lines, Inc." with a letter acknowledging the notice and stating that his firm represented "this cruise line." The agent meticulously avoided using any corporate name, but the letter could certainly be read as an assertion that the notice to "Royal Caribbean Cruise Line, Inc." had notified the ship's operator of Schrader's claim. Secondly, Schrader's attorney swore in his affidavit that he contacted Cruise Line, Inc. in Miami and that he was told that notice to Cruise Line, Inc. in Miami was "sufficient" (presumably, meaning sufficient to satisfy the ticket's requirement of notice to the "carrier").

Schrader's lawyer also made statements in his affidavit implying that the Corporation was not registered to do business in Florida at the time the suit was filed (though the Corporation's president stated that it was so registered at the time of the summary judgment motion). We note that Schrader has not filed any evidentiary material indicating whether and when the Corporation was obliged to register to do business in Florida.

On this record, reasonable persons could differ as to whether the Corporation (or its predecessor in interest) actually misled Schrader and as to whether Schrader was sufficiently diligent to deserve the benefit of equitable estoppel. *See Walker Mfg. Co. v. Dickerson, Inc.,* 560 F.2d 1184, 1188 (4th Cir.1977) (holding district court should not have directed verdict on equitable estoppel issue, since reasonable men could differ as to whether defendant's acts had induced plaintiff to delay suit); *Travelers Indem. Co. v. Swanson,* 662 F.2d 1098, 1102 n. 2 (5th Cir.1981) ("Normally questions of estoppel . . . depend upon inferences to be drawn from known facts about which reasonable men could readily differ, and are therefore appropriate for submission to a jury."). Therefore, the estoppel issue presents a triable question of fact, and we must reverse the summary judgment entered in the Corporation's favor.

We reverse and remand for further proceedings.